## Case No. 4,850.

### In re FLANAGAN.

[5 Sawy. 312; 18 N. B. R. 439; 26 Pittsb. Leg. J. 128.] [1]

District Court, D. California. Nov. 15, 1878.

Naphtaly, Friedenrich and Ackerman, for bankrupt.

J. R. Brandon, Esq., for creditor, Cornelius King.

HOFFMAN, District Judge. On the sixteenth of May, 1878, a petition in involuntary bankruptcy was filed against John Flanagan by certain of his creditors, claiming to constitute one fourth in number of all his creditors, and to represent one third in value of his aggregate indebtedness. On this petition the usual order to show cause was issued, and on the same day a petition was presented by the debtor praying that a creditor's meeting be called to consider a composition proposed for their approval. The meeting was accordingly held, the composition was accepted by creditors to the requisite number and amount, and on the first of July the composition was duly confirmed by the court, and further proceedings in bankruptcy stayed.

On the twenty-eighth of August, one Thomas Meany, a creditor of the alleged bankrupt, filed his petition, praying that the composition be set aside. The ground of this application was, that the bankrupt had failed, and refused to comply with its terms by depositing certain notes with the register for the benefit of his creditors.

The reason of this refusal was the fact that one King had, previously to the filing of the petition in bankruptcy, levied an attachment upon the whole stock in trade of the alleged bankrupt, which attachment he re-

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission. 26 Pittsb. Leg. J. 128, contains only a partial report.]

fused to relinquish, and accept the terms of the composition.

As no adjudication had been made—no assignee appointed, nor assignment made by the register—the lien of the attaching creditor remained unaffected by the bankruptcy proceedings.

This petition was, after several continuances, finally brought to a hearing on the twenty-fourth of September, 1878, on which day an order setting aside the composition was made. Previously, however, to the making of this order, but subsequently to the filing of Meany's petition, viz., on the thirty-first of August, Flanagan filed his voluntary petition to be adjudged a bankrupt. The usual order of reference was made, and on the twenty-third of September he was adjudicated a bankrupt by the register. At the creditor's meeting, called by the register for the election of an assignee, King, the attaching creditor, appeared by his counsel, and objected to the proceedings, on the ground that the court had no jurisdiction in the premises by reason of the pendency of the proceedings under the involuntary petition; and that the same not having been dismissed or otherwise terminated, the court would not permit or take cognizance of the proceedings under the voluntary petition.

The question thus presented was certified to the court, argued by counsel, and submitted for decision. It is objected, on behalf of the bankrupt, that King, the attaching creditor, has no standing in court, not having proved his debt in either proceeding. To this it is replied that proof of debt was not made in the present proceeding, because the creditor, by so doing, might be deemed to have come in under it, and to have waived his right to object to it. Technically, the objection of the bankrupt seems to be well taken; but the omission can be remedied, and the rights of the creditor preserved by ordering him to make such proof, and reserving to him the right to make thereafter such objection to the proceedings as he may see fit.

In the view I take of the principal question, such an order is unnecessary, for I shall proceed to dispose of the application on its merits, and as if the attaching creditor were regularly in court.

The ground on which the court is urged to set aside the adjudication, and to dismiss the petition in the voluntary case, is that the whole proceeding is void for irregularity. In support of this position, several cases are cited, and confidently relied on by counsel. The first and most pointed of these is In re Stewart [Case No. 13,419]. In that case a petition had been filed against Stewart by his creditors, and he had, before the return day of the rule, to show cause by an indorsement upon the copy of the petition served upon him, admitted that all the allegations of the petition, except those of fraud, were true. He subsequently, and before the re-

turn day of the rule to show .cause, filed his voluntary petition, and was adjudged a bankrupt. No reason for this proceeding appears to have been given, and the attorneys for the petitioning creditors moved that the two petitions be consolidated, or else that the adjudication on the second petition be set aside, and the case of the creditors held for trial.

In deciding this motion Mr. J. Duval observes: "It never was intended by the bankrupt act, and no correct rule of practice can tolerate it, that when a creditor has instituted proceedings to force his debtor into bankruptcy the latter should be allowed to become a bankrupt and be adjudicated as such on his own petition before a determination of the creditors' petition. To permit such a practice might work a flagrant wrong upon the rights of the petitioning creditor." The adjudication under the voluntary petition was thereupon set aside and the debtor was adjudged on the creditors' petition. As a general rule of practice the ruling of the learned judge in this case was very possibly correct. But it by no means follows that the right of the insolvent to avail himself of the benefit of the act is in all cases suspended by the filing of a petition against him, or that the court is without jurisdiction to entertain it if filed.

Cases may easily be imagined where it may be indispensable to the interests of the other creditors and to the securing to the debtor the benefit of the act that he should file his voluntary petition. The creditors' petition may be abandoned before adjudication or the allegation of the act of bankruptcy may be untrue, or the creditors may not be the holders of provable debts, or they may not constitute the statutory quorum of creditors. In these and the like cases it might be a great hardship upon the debtor to compel him either to admit allegations which he knows to be untrue, or else to be subjected to the delay and expense of contesting them, and in the mean time to have his right to the benefit of the act suspended and denied. At the termination of the proceedings, if the result be in his favor, his right to file his voluntary petition would of course revive. But it may then be too late to defeat attachments and preferences, and to secure the equal distribution of his assets among all his creditors. The principal object of the act would thus be defeated.

The next case cited is In re Wielarski [Case No. 17,619]. In that case the bankrupt filed a voluntary petition in 1868, on which he was adjudicated, and an assignee appointed. In 1870 he filed a second petition. The same debts were set forth, and the same creditors named in both petitions. Objection was made to the proceeding under the second petition, which objection the register held to be well taken. The matter having been referred to the court, Mr. Justice Blatchford said: "The register is correct; the clerk will enter an order staying proceedings in this matter until the further order of the court. If any good reason exists for going on with this matter, it may be shown to the court." This case, therefore, not only does not decide that the filing of the second petition was wholly nugatory and void, and that the court was without jurisdiction to entertain it, but it clearly intimates that the court would proceed in it if any good reason for doing so should be shown.

The next case—In re Drisko [Case No. 4,-090]—appears to have no application to the subject under consideration. It merely decides that a voluntary bankrupt who has contracted new debts since the filing of a prior petition may file a new petition in bankruptcy.

The next case—In re Lacey, Downs & Co. [Case No. 7,965]—also has no bearing upon the present inquiry. It relates merely to the right of a creditor to intervene and prosecute to adjudication when the petitioning creditor fails to appear or proceed with the prosecution.

The above are all the cases cited by the counsel for the attaching creditor. It will be seen that only one of them lends any support to the position he seeks to maintain. I have not been referred by the counsel for the bankrupt to any case where the point under consideration has been decided under the late bankrupt act. But a decision under the former act is cited, which, by the force of its reasoning and the great eminence of the judge by whom it was made, is entitled to the greatest consideration. I transcribe the whole of Judge Conkling's opinion: "I can perceive no sufficient reason why the pendency of the creditors' petition on which no decree of bankruptcy has yet been granted, should be considered a bar to the right of voluntary petition secured by the act to the debtor. The act contains no such limitation of this right. The debtor may have good reasons for wishing to exercise it, notwithstanding the prior prosecution of a petition in invitum. He may be apprehensive that it may be voluntarily abandoned, or he may know that the charges it makes against him are unfounded, and think proper to contest their truth, and thus defeat the petition. I can not see that any injury can possibly be done to creditors by this practice, while in one respect it is advantageous by giving them the benefit of the petitioners' schedules of debts and property without expense." In re Canfield [Case No. 2,380]. These observations appear to me conclusive.

But it is urged that the bankrupt act directs that where the court has refused to accept and confirm a composition, or has set it aside after confirmation, "the debtor shall be proceeded with as a bankrupt." It is contended that under this provision the debtor, after failure to effect a composition, or after it has been set aside by the court, is to be taken and deemed to be a bankrupt, even

though no adjudication has been made against him. Whether it is supposed that a formal adjudication must in such a case be made, or whether he is to be considered and proceeded with as a bankrupt without such adjudication, I did not clearly understand at the hearing. But whichever course be adopted, it is claimed that the debtor is, under the circumstances stated, declared by law to be a bankrupt; and it is no longer open to the court to inquire into the truth of any of the allegations of the petition, either in respect to the quorum of creditors, the commission of the acts of bankruptcy alleged, or the existence of the debts alleged to be due to the petitioning creditors.

As a corollary to this proposition, it is urged that, inasmuch as the court is expressly commanded to proceed with the debtor as a bankrupt, that proceeding must be prosecuted, and no other proceeding founded on his voluntary petition can be entertained. It does not appear that the construction of the above-cited provision of the bankrupt act, which this court is urged to adopt, has hitherto received any judicial sanction. It seems to be favored, however, by Mr. Blumenstiel, as demanded by the language, and most nearly conforming to the English act from which it is modeled. Blum. Bankr. 464.

But the correctness of this interpretation is open to serious question. If, upon the failure of a proposal of composition, the debtor is to be at once adjudicated a bankrupt, it must be because the proposal of the debtor for a composition is treated as an admission of the truth of all the allegations in the creditor's petition necessary to procure an adjudication. But can this proposal be so treated?

An honest debtor, against whom a petition has been filed, and who knows himself to be insolvent, may propose or attempt an arrangement with his creditors, although he has not committed any of the acts of bankruptcy (perhaps fraudulent) with which he is charged; and although he knows that the necessary quorum of creditors have not united in the petition. His want of success in effecting the composition can not surely be treated as an admission by him of the truth of allegations which he knows to be false. His proposal for a composition is an admission of his insolvency, and nothing else. Justice seems to demand that, after failing to effect it, it should still be open to him to contest the truth of the allegations upon which it is sought to procure his adjudication as an involuntary bankrupt.

But even if his proposal for a composition could be considered as an admission by him to the extent supposed, it could have no greater effect than his written admission of the truth of the allegations. The provisions of the act which require that creditors to a specified proportionate number and amount shall join in the petition, were not intended

solely for the protection of the debtor. Even when he has signed a written admission that the requisite quorum has united in the petition, the court must still "be satisfied that the admission is made in good faith." If it should subsequently appear that it was the result of collusion and fraud, the adjudication may be set aside. In re Duncan [Case No. 4,131].

The dissentient creditors have rights which the statute recognizes and the court will protect. And amongst them is the right to insist that if the debtor, contrary to their wishes and interests, is to be thrown into involuntary bankruptcy, it shall be done only under the conditions imposed by the law. The debtor's admission that those conditions exist is of no effect if the fact be otherwise. It results that even if the proposal for composition could be treated as an admission by the debtor of all the allegations of the petition, it could have no effect to conclude the inquiry as to whether the requisite quorum has joined, because his written admission of the fact, if it does not exist, would be equally nugatory.

For these reasons I am of opinion that the object and meaning of the clause in question were merely that the court, on the failure of the proceedings in composition, should resume the case at the point where its progress was suspended by the proceedings in composition, and that it should be thereafter conducted as if no proceedings had been taken. In other words, that the phrase, "he shall be proceeded with as a bankrupt," should be construed to mean that the case shall be proceeded with as a case in bankruptcy in conformity with the provisions of law. This would also seem to be the reasonable construction of the English act upon which, as Mr. Blumenstiel observes, our own is modeled. The language of that act is: "If it appear to the court * * * that a composition in consequence of legal difficulties, or for any cause, can not proceed without injustice or undue delay * * * the court may adjudge the debtor a bankrupt and proceedings may be had accordingly." That is, the court may so adjudge if a proper case for an adjudication be made out. If this construction of the clause in question be correct, the circumstance that an abortive attempt at composition has been made may be eliminated from this discussion, and the case become the simple one of a filing of a voluntary petition by a debtor against whom a petition in invitum has already been filed, but on which no adjudication has been made. It it is evident that in such case proceedings in both suits can not go on; and it is equally clear that proceedings should be continued in the case in which an adjudication has been made, and in which no questions can arise as to the concurrence of the requisite quorum of creditors, or the commission by the bankrupt of the acts of bankruptcy alleged. There will thus be secured,

to the bankrupt the benefit offered by the act, and to the creditors the equal distribution of the assets discharged of any attachments which are by the act declared to be dissolved.

The objection of the attaching creditor is overruled, and the register will proceed in the matter of the voluntary petition. The proceedings in the involuntary case will be stayed, unless the petitioning creditors should desire to move for its final dismissal.

The clerk will certify this decision to the register.